Thomas CRUMP, et al.

v.

**GILMER INDEPENDENT SCHOOL DISTRICT.**

No. 6:92 CV 315.

United States District Court,
E.D. Texas,
Tyler Division.

May 29, 1992.

David Bryant Griffith, Gilmer, Tex., for plaintiffs.

Herbert L. Boyland, Jr., Gary Harold Shaver, Harbour Kenley Boyland Smith & Harris, Longview, Tex., for defendant.

### ORDER

JUSTICE, District Judge.

Plaintiffs, Carlos Crump, Sharon Jeffrey, and Wintress Finch, instituted this civil action, pursuant to 42 U.S.C. § 1983, against the Gilmer Independent School District, alleging that they are being unconstitutionally denied a high school diploma and the

---

right to participate in their high school graduation ceremony. Plaintiffs seek a temporary restraining order mandating that the high school allow them to participate in the graduation ceremony, which is scheduled to begin at 8:00 p.m. this evening. An in-chambers hearing on the plaintiffs' application for a temporary restraining order was held on Thursday, May 28, 1992, at 2:00 p.m., at which the court heard the arguments of counsel and the statements of school officials and the plaintiffs. For the reasons stated below, the requested relief will be granted as to plaintiffs Crump and Jeffrey, and denied as to plaintiff Finch.

## I. *Facts*

Most of the relevant facts are not in dispute. Plaintiffs are high school seniors at Gilmer High School in Gilmer, Texas, who failed to complete successfully the recently implemented Texas Assessment of Academic Skills Examination (TAAS). Plaintiffs took the examination on April 2, 1992, and received the results on May 11, 1992.[1] Plaintiffs Crump and Jeffrey each failed the examination by two points, while plaintiff Finch failed it by one point.

The TAAS examination is a statewide competency examination designed to measure student performance in mathematics and writing. Texas has required all high school students to pass an examination in order to receive a diploma since 1985. However, successful completion of the TAAS test was only made a requirement for graduation in the fall of 1991. The TAAS examination is substantially more difficult than the test that was previously given to high school students.

Under Texas law, plaintiffs cannot receive a high school diploma until they have successfully completed the TAAS examination.[2] 2 Tex.Educ.Code Ann. § 21.553 (Vernon 1987). The next test is scheduled to be given on July 13, 1992. All three plaintiffs have submitted sworn affidavits stating that they intend to take the test in July 1992, and that they will continue to take any required test until they pass. Except for the TAAS examination, plaintiffs Crump and Jeffrey have successfully completed all other requirements for a high school diploma.

## II. *Standard for Granting A Temporary Restraining Order*

In order to obtain a temporary restraining order, plaintiffs must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the defendant; and (4) that granting the preliminary injunction will not disserve the public interest. *Justin Industries v. Choctaw Securities, L.P.,* 920 F.2d 262, 268 n. 7 (5th Cir.1990); *Mississippi Power & Light v. United Gas Pipe Line,* 760 F.2d 618, 621 (5th Cir.1985); *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). A temporary restraining order is an extraordinary remedy; it should be granted only if the plaintiff clearly carries the burden of persuasion as to all four factors. *Mississippi Power & Light,* 760 F.2d at 621.

## III. *Balancing of Harms*

The last three factors all weigh heavily in favor of the plaintiffs. If it

---

**1.** The plaintiffs have apparently taken the test on three prior occasions as well, beginning in the fall of 1990.

**2.** Section 21.553 provides:

(a) A pupil who has not performed satisfactorily on all sections of the secondary exit level assessment instrument by the time the pupil has successfully completed the 12th grade level shall not receive a high school diploma until the pupil has performed satisfactorily on all sections of the secondary exit level assessment instrument.

(b) Each time the assessment instrument is administered, a pupil who has not been given a high school diploma because of a failure to perform satisfactorily on all sections of the secondary exit level assessment instrument may retake those sections of the assessment instrument on which the pupil has not performed satisfactorily.

(c) A pupil who has been denied a high school diploma under the provisions of Subsections (a) and (b) above, and who subsequently performs satisfactorily on all sections of the secondary exit level assessment instrument shall be issued a high school diploma.

should eventuate that the plaintiffs were wrongly denied their diploma, then they would have forever lost the opportunity to participate in graduation ceremonies with their high school class. It hardly needs emphasizing that high school graduation ceremonies are an occasion to celebrate profound personal achievement and hope for the future. A student's high school graduation is the source of fond memories and treasured mementos and photographs that cannot be replaced. Unquestionably, plaintiffs will suffer irreparable harm if they are denied the opportunity to participate in their graduation ceremony. *Dubey v. Niles Township High Schools District 219*, No. 91–C3523, 1991 WL 111205, at *2, 1991 U.S.Dist. LEXIS 7739, at *4 (N.D.Ill. June 7, 1991). *Cf. also Albright v. Board, of Educ. of Granite School Dist.*, 765 F.Supp. 682, 686 (D.Utah 1991).

By contrast, defendant will suffer no harm if the students are allowed to participate in the graduation ceremony. The students will not be able to obtain a diploma unless and until they pass the TAAS test or the test is declared invalid. Furthermore, the plaintiffs have no objection to Gilmer high school announcing in the program or by other means that the plaintiffs have not yet successfully completed the TAAS test.

Defendants assert that the purpose of the graduation ceremony is to reward those students who have completed all their graduation requirements, and that allowing the plaintiffs to participate will cheapen the ceremony for the remaining students. Toward this end, defendants claim that it has always been the practice at Gilmer High School not to allow students to participate in the graduation ceremonies unless they have completed all prerequisites for graduation. Unquestionably, the high school has a strong interest in instilling pride in accomplishment by giving students a strong incentive to complete high school successfully. Plaintiffs do not challenge Gilmer High School's prerogative to require completion of all other graduation requirements, except passing the TAAS test, as a condition to participating in graduation. Nonetheless, plaintiffs Crump and Jeffrey have studied for four years and have completed all other academic requirements. The only element separating plaintiffs Crump and Jeffrey from the other 137 students who will graduate this evening is that they have failed to pass a test which may not be legally valid. Whatever marginal benefits GISD may garner by denying plaintiffs the opportunity to participate in this once in a lifetime experience are outweighed by the tremendous potential for irreparable harm to them.

Nor will allowing plaintiffs to participate in the graduation ceremony cause any harm to the public. The public interest would be ill served if students were wrongly denied an opportunity to reap a benefit to which they were justly entitled. Furthermore, the Texas legislature has determined that the public interest will be adequately served by denying a diploma to students who do not pass the test. *See* 2 Tex.Codes Ann. § 21.553(a) & (c) (Vernon 1987). No statewide law or regulation mandates the additional sanction of denying the student an opportunity to participate in the graduation ceremony.

## IV. *Likelihood of Success on the Merits*

The propriety of granting the requested relief therefore turns entirely on whether the plaintiffs are likely to succeed on the merits. The leading case on competency testing of students is *Debra P. v. Turlington*, 644 F.2d 397 (5th Cir. Unit B 1981), in which the court held unconstitutional a Florida law requiring that students pass a statewide competency examination in order to receive a diploma.[3] In that case, the court held that the state's compulsory attendance law and statewide education program gave students a constitutionally protected expectation that they would receive a diploma if they satisfactorily completed high school. 644 F.2d at 404. *See also Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975). Be-

---

**3.** For a thorough analysis of potential constitutional problems underlying the establishment of student competency examinations in Texas, *see* Ellen Smith Pryor, *Student Competency Testing in Texas* 16 St. Mary's L.J. 903, 908–921 (1985).

cause the students had a protected property interest, the court held, the state was prohibited from imposing new criteria absent adequate notice and a sufficient nexus between the test and the school curriculum. *Id.*

### A. Notice

With regard to notice, the *Debra P.* court held that due process requires that students be given adequate notice that passing the test is a prerequisite to obtaining a diploma. *Id. Accord Brookhart v. Illinois State Bd. of Education,* 697 F.2d 179, 186 (7th Cir.1983). Such notice is necessary so that students will have an adequate opportunity to prepare for the test, the school district will have an adequate time to prepare a remedial program, and there will be sufficient time to correct deficiencies in the test and set an appropriate passing score. *See Debra P.,* 644 F.2d at 404; *Brookhart,* 697 F.2d at 186. *See also* Ellen Smith Pryor, *Student Competency Testing in Texas* 16 St. Mary's L.J. 903, 918–919 (1985).

In this case, the students were first exposed to the TAAS test in the fall of 1990, but the test was not made a requirement for graduation until the fall of 1991. Remedial programs tailored to helping students pass the test did not begin until slightly over one year ago, in the spring of 1991. Although the notice that must be provided varies according to the circumstance of each case, comparable implementation periods have been declared unconstitutional. *Debra P.,* 644 F.2d at 404 (thirteen month period between implementation of test and denial of diploma violated due process); *Brookhart,* 697 F.2d at 179 (eighteen month period for implementation of competency tests as diploma requirement for handicapped students violated due process). In fact, in *Debra P.,* the district court enjoined the state from denying students a diploma for failure to pass the competency examination for four years.

*Debra P. v. Turlington,* 474 F.Supp. 244, 267, 269 (M.D.Fla.1979) *aff'd in part, vacated in part,* 644 F.2d 397 (5th Cir.1981). The court relied on expert testimony that, in order to meet constitutional standards, at least four to six years was required to implement a new testing requirement. *Id.* Accordingly, it is found that there is a substantial likelihood that the implementation period for the TAAS test will prove to be constitutionally deficient.

### B. Nexus Between Curriculum and Examination

The *Debra P.* court also held that in order for a competency test to be valid, the state must prove that the competency test fairly assessed what was actually taught in the schools.[4] 644 F.2d at 405.

> [F]undamental fairness requires that the state be put to test on the issue of whether the students were tested on material they were or were not taught.

> Just as a teacher in a particular class gives the final exam on what he or she has taught, so should the state give its final exam on what has been taught in its classrooms.

644 F.2d at 406. Significantly, the court refused to accept the state's assurance that the test's content was based on the minimum student performance standards that were required in Florida schools. *Id.* Rather, the court demanded concrete proof that the content of the tests was actually being taught. The court noted that the state had made no effort to ascertain whether or not the minimum student performance standards were actually being taught in Florida public schools. Nor had there been formal studies conducted to determine whether the skills measured on the test were actually being taught in the schools. 644 F.2d at 405. The court concluded:

> We believe that the state administered a test that was, at least on the record

---

**4.** This requirement is termed "curricular validity." *Debra P.,* 644 F.2d at 405. Curricular validity has two components. First, the test items must adequately correspond to the required curriculum in which the students should have been

instructed by the time that they take the test. Second, the test must correspond to the material that was actually taught in the relevant schools, regardless of what should have been taught. E.S. Pryor, *supra* p. 7, 16 St. Mary's L.J. at 915.

before us, fundamentally unfair in that it *may* have covered matters not taught in the schools of the state.

644 F.2d at 404 (emphasis in original). Because of the lack of this proof, the court remanded the case to the district court for a determination of whether the examination was "a fair test of that which was taught." 644 F.2d at 406.

Hence, *Debra P.* indicates that school districts cannot refuse to issue diplomas for failure to pass a state competency examination absent proof that the matters tested are actually taught in the relevant schools. Even at this preliminary stage, there is considerable doubt that the defendant will be able to make this showing. Defendant maintains that the TAAS test is based on the essential elements of English language arts and mathematics, for which each school district is required to provide instruction.[5] However, since defendant's administrators and teachers are not allowed to view the contents of these tests, there is no way of knowing for certain that the TAAS examination is actually based on these elements. There is no statutory requirement, for example, that the test be based solely on these elements.[6] More importantly, even if TAAS is based on the essential elements established by the Board, the effect of this restriction on TAAS would depend entirely on how specific those elements are. The more vague and broad the elements are, the less likely it is that the examination questions will specifically correspond to the school curriculum. Because the district has not given the court any examples of the required elements, the court cannot assess whether those guidelines provide any assurance that TAAS is adequately linked to the school curriculum. Finally, even if the *required* Texas curriculum theoretically cov-

ers the materials tested by TAAS, GISD still must prove that the material is actually taught in its schools. *See Debra P.*, 644 F.2d at 405; E.S. Pryor, *supra* p. 7, 16 St. Mary's L. J. at 915.

In sum, the school district must eventually make a substantial showing to demonstrate the validity of the TAAS examination, and there is little assurance that the district will be able to make this showing. On the other hand, there is already some indication that the TAAS examination tests matters outside the curriculum. One of the plaintiffs stated that, based on his experience, TAAS tested areas not covered in the remedial programs or in the regular school curriculum. In addition, school district representatives admitted that they never seen a TAAS examination and were not permitted to view them. Without an opportunity to compare TAAS with its curriculum, it seems likely that there will be at least some divergence between the skills tested by TAAS and the GISD curriculum. Under these circumstances, the court has no choice but to conclude that the plaintiffs have made a substantial showing of a likelihood of success on the merits.

### V. *Bond Requirement*

Under Fed.R.Civ.P. 65(b), no security is required if there is no risk of a monetary loss to the defendant if an injunction is granted. *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir.1978); *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2nd Cir.), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974). It is found that there is no threat of an injury to the defendant if the injunction is granted; therefore, security is not required.

---

5. Section 21.101 of the Education Code requires school districts to offer "a well balanced curriculum" that includes various subjects including English language arts and mathematics. 2 Tex. Educ.Code Ann. § 21.101(a) (West 1987). The Code further requires the State Board of Education to designate the essential elements of these subjects that must be taught by each school district. 2 Tex.Educ.Code Ann. § 21.-101(c) (West 1987).

6. *See* § 21.551(b) (effective Aug. 28, 1989 (requiring Central Education Agency to adopt exit level assessments based on "competencies for pupils at the 12th grade level"); § 21.5512(a) (effective Aug. 26, 1991) (requiring State Board of Education to develop performance based examinations based on broad educational goals).

## VI. *Conclusion*

It is found that plaintiffs Carlos Crump and Sharon Jeffrey have made the requisite showing for a temporary restraining order, and that they have no adequate remedy at law. It is further found that plaintiff Wintress Finch has not made the requisite showing for a temporary restraining order, in that she has not demonstrated that she has completed successfully completed all prerequisites to graduation except for completion of the TAAS exam. It is further found that the posting of security is not required.

Accordingly, the defendant, Gilmer Independent School District, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this temporary restraining order by personal service or otherwise, shall be, and they are hereby, TEMPORARILY RESTRAINED AND ENJOINED, pending hearing on plaintiff's motion for preliminary injunction, below ordered, from failing to comply with the following order and injunction:

Defendant, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this temporary restraining order by personal service or otherwise, shall be, and they are hereby, ORDERED and ENJOINED to permit plaintiffs Carlos Crump and Sharon Jeffrey to participate fully, except as herein provided, in the graduation exercises of the Gilmer High School, scheduled at 8:00 o'clock p.m. on this 29th day of May, 1992; PROVIDED, however, that defendant may have it announced at ceremonies, if its officials so desire, that such plaintiffs have not yet successfully completed the Texas Assessment of Academic Skills (TAAS) Examination; and PROVIDED, further, that defendant shall not be required to issue a diploma to either of such plaintiffs until each, respectively, has successfully completed the state mandated TAAS Examination.

It is further ORDERED that plaintiff's motion for preliminary injunction shall be, and it is hereby, set down for hearing on the 9th day of June, 1992, at 10:00 o'clock a.m., before the undersigned judge, in Room 306, United States Courthouse Annex, 211 West Ferguson Street, Tyler, Texas.

It is further ORDERED that no bond or other security shall be required of plaintiff to effectuate this order.