

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00355-CV

**CANDICE SOSSAMON, INDIVIDUALLY AND
AS NEXT FRIEND OF KATELYN KIRKLAND,
KATELYN KIRKLAND, AND JEFFREY S. DAVIS,**

          **Appellants**

 **v.**

**CLEBURNE INDEPENDENT SCHOOL DISTRICT
BOARD OF TRUSTEES AND JAMES WARLICK,
INTERIM SUPERINTENDENT,**

          **Appellees**

---

**From the 413th District Court
Johnson County, Texas
Trial Court No. C200800320**

---

## MEMORANDUM OPINION

---

Candice Sossamon and her daughter Katelyn Kirkland filed suit against the Cleburne Independent School District Board of Trustees and Interim Superintendent James Warlick (collectively, "Cleburne ISD") after Sossamon was informed that Kirkland would not be receiving a high school diploma from Cleburne High School ("CHS") and would not be allowed to participate in the CHS graduation ceremony. The

trial court denied Sossamon's and Kirkland's request for a temporary injunction and later granted a motion for sanctions filed by Cleburne ISD. The court ordered Sossamon and Kirkland to pay $7,500 in costs and attorney's fees under section 11.161 of the Education Code and ordered Sossamon, Kirkland and their attorney Jeffrey S. Davis to pay an additional $3,500 as sanctions under Rule of Civil Procedure 13 and section 10.004 of the Civil Practice and Remedies Code.

Appellants contend in three issues respectively that the court abused its discretion by imposing sanctions under Rule 13, section 10.004, and section 11.161. We will reverse and render.

## Background

During the 2007-2008 school year, Kirkland was a senior at CHS on track to graduate, except that she was failing her English class. She hid several report cards from Sossamon and finally revealed her predicament by leaving a letter on Sossamon's pillow. School officials advised Sossamon that the only way Kirkland would be able to graduate was to transfer to the TEAM School, an accelerated learning program. Sossamon and Kirkland completed the paperwork for the TEAM School. One document they signed concerned high school graduation and reads:

> We understand that all students from the Cleburne Independent School District who complete their credits from the TEAM School will be provided a graduation exercise and diploma from the TEAM School. We also understand that should it be our desire to graduate from Cleburne High School, we may transfer to that school at the beginning of the last semester of our senior year.

Kirkland finished her coursework promptly and sought to transfer back to CHS so she could graduate with her class. Cleburne ISD officials advised that she would not be permitted to do so and referred them to the document they had signed regarding the TEAM School graduation. Sossamon and Kirkland sought administrative review and ultimately filed a grievance which was to be heard by the school board. However, because the grievance was not filed until May 7, they were advised that it would not be included on the agenda for the board's May 12 meeting. During the public comment section of the meeting, Sossamon presented her complaint to the school board, which advised that they would confer with Superintendent Warlick on the matter.

By letter dated May 16, Warlick advised Sossamon that Kirkland would not be permitted to graduate from CHS. Sossamon filed a second grievance which the school board placed on its agenda for the June 9 meeting. However, graduation was scheduled for May 30.

Sossamon and Kirkland filed suit on the afternoon of May 29. They alleged that Cleburne ISD failed to provide the notice required by section 28.022 of the Education Code to be given to the parent or guardian of a student whose performance in a subject "is consistently unsatisfactory." *See* TEX. EDUC. CODE ANN. § 28.022(a)(3) (Vernon 2006). They sought a temporary injunction prohibiting the defendants from preventing Kirkland from participating in CHS graduation ceremonies the following day and an order directing that she be given a CHS diploma. The court held an emergency hearing on May 30 and, after hearing Sossamon's testimony, denied the requested injunction.

The court granted Sossamon's and Kirkland's motion for non-suit on July 3. Cleburne ISD filed a motion for sanctions claiming that the "suit is groundless, brought in bad faith, misrepresented facts, and lacks basis in law and fact" because:

- Sossamon and Kirkland were aware before filing suit that Kirkland could not satisfy the local requirements necessary to receive a diploma from CHS and thus was not entitled to such a diploma;

- state and federal law is "very clear" that students do not have a fundamental right to participate in high school graduation ceremonies; and

- their claim that Kirkland should be awarded a diploma from CHS and allowed to participate in the CHS graduation ceremonies because of the defendants' alleged violations of the Education Code "is without support in Texas law."

At the sanctions hearing, the court heard argument of counsel and admitted in evidence a transcription of the injunction hearing. At the conclusion of the hearing, the court took the matter under advisement and asked each side to submit a proposed order. The court signed its order granting sanctions about a month later.

The court ruled that the suit was groundless because: (1) "there is no remedy for a violation of Texas Education Code § 28.022"; and (2) the court was "without the authority to grant Plaintiffs their requested remedy." The court ruled that the suit was brought in bad faith for the purpose of harassing Cleburne ISD because Sossamon and Kirkman were aware before filing suit that: (1) Sossamon had received the notice required by section 28.022; and (2) they "were informed throughout their attempt to receive a diploma and graduate with [CHS] that Kirkland had not, could not, and did not meet all necessary requirements to so receive a diploma from and participate in graduation ceremonies with [CHS]."

## Standard of Review

We review an order imposing sanctions under an abuse-of-discretion standard. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 347 (Tex. App.—San Antonio 2006, no pet.).

> An appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. To determine if the sanctions were appropriate or just, the appellate court must ensure there is a direct nexus between the improper conduct and the sanction imposed. Generally, courts presume that pleadings and other papers are filed in good faith. The party seeking sanctions bears the burden of overcoming this presumption of good faith.

*Low*, 221 S.W.3d at 614 (citations omitted).

## Rule 13 Sanctions

Appellants contend in their first issue that the court abused its discretion by imposing sanctions against them under Rule 13.

"The imposition of Rule 13 sanctions involves the satisfaction of a two-part test. First, the party moving for sanctions must demonstrate that the opposing party's filings are groundless, and second, it must be shown that the pleadings were filed either in bad faith or for the purposes of harassment." *R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 707 (Tex. App.—Waco 2008, pet. denied) (quoting *Estate of Davis v. Cook*, 9 S.W.3d 288, 297 (Tex. App.—San Antonio 1999, no pet.)).

"'Groundless' for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." TEX. R. CIV. P. 13. "The trial court uses an objective standard to

determine if a pleading was groundless: did the party and counsel make a reasonable inquiry into the legal and factual basis of the claim?" *R.M. Dudley Constr.*, 258 S.W.3d at 708. In doing so, "the trial court must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading." *Id.*

Here, the trial court ruled that the suit was groundless because: (1) "there is no remedy for a violation of Texas Education Code § 28.022"; and (2) the court was "without the authority to grant Plaintiffs their requested remedy."

Generally, a party whose claim concerns a violation of school laws must exhaust the statutorily provided administrative remedies with the Commissioner of Education before seeking judicial relief. *Guerra v. Santa Rosa Indep. Sch. Dist.*, 241 S.W.3d 594, 599-600 (Tex. App.—Corpus Christi 2007, pet. denied); *Dotson v. Grand Prairie Indep. Sch. Dist.*, 161 S.W.3d 289, 291(Tex. App.—Dallas 2005, no pet.); *see* TEX. EDUC. CODE ANN. § 7.057 (Vernon 2006) (providing for administrative appeal). One exception to this rule applies when the party will suffer irreparable harm and the Commissioner is unable to provide relief. *Houston Fed'n of Teachers, Local 2415 v. Houston Indep. Sch. Dist.*, 730 S.W.2d 644, 646 (Tex. 1987); *Dotson*, 161 S.W.3d at 291; *Harlandale Indep. Sch. Dist. v. Rodriguez*, 121 S.W.3d 88, 92 (Tex. App.—San Antonio 2003, no pet.); *see Guerra*, 241 S.W.3d at 600.

Therefore, the court's conclusions are incorrect as a matter of law. *See R.M. Dudley Constr.*, 258 S.W.3d at 708 (failure to analyze or apply law correctly is abuse of discretion). Here, Sossamon and Kirkland had a statutory right to pursue administrative relief for the alleged violation of section 28.022. *See* TEX. EDUC. CODE

ANN. § 7.057. And because the Commissioner is not authorized to award injunctive relief and Kirkland would not otherwise have been able to receive a CHS diploma and participate in the CHS graduation ceremonies, it was within the trial court's authority to grant injunctive relief if Sossamon and Kirkland otherwise established their entitlement to it. *See Houston Fed'n of Teachers*, 730 S.W.2d at 646.

Accordingly, the court abused its discretion by finding and concluding that Sossamon's and Kirkland's suit was groundless. *See R.M. Dudley Constr.*, 258 S.W.3d at 708. We sustain their first issue.

### Section 10.004 Sanctions

Appellants contend in their second issue that the court abused its discretion by imposing sanctions under section 10.004 of the Civil Practice and Remedies Code.

According to section 10.004(a), "A court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both." TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(a) (Vernon 2002).

The court's determination that Sossamon's and Kirkland's claims were "groundless" was based on its understanding that "there was no basis in law or fact, nor was there a good faith argument for an extension, modification, or reversal of existing law" with respect to their claims. This conclusion led to the imposition of sanctions for violation of section 10.001(2).[1] *See id.* § 10.001(2) (Vernon 2002). But we

---

[1] Section 10.001(2) provides in pertinent part that the signing of a pleading "constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry . . . each claim, defense, or other legal contention in the pleading or motion is warranted by

have already determined that the court abused its discretion by finding and concluding that the suit was groundless. Thus, the court abused its discretion by imposing sanctions for violation of section 10.001(2).

The court also determined that their claims were brought in bad faith for the purpose of harassing Cleburne ISD because Sossamon and Kirkman were aware before filing suit that: (1) Sossamon had received the notice required by section 28.022; and (2) they "were informed throughout their attempt to receive a diploma and graduate with [CHS] that Kirkland had not, could not, and did not meet all necessary requirements to so receive a diploma from and participate in graduation ceremonies with [CHS]." This conclusion led to the imposition of sanctions for violation of section 10.001(1).[2] *Id.* § 10.001(1) (Vernon 2002).

*Section 28.022 Notice*

The first component of the court's bad faith determination is grounded in its Finding of Fact No. 5:

> The sole basis of Plaintiffs' complaint against the District was that Plaintiffs were not provided with Notice, pursuant to Texas Education Code § 28.022, ("Notice") informing Sossamon that her daughter, Katelyn Kirkland ("Kirkland") was failing English. Plaintiffs were aware, prior to filing their Petition, that Sossamon received the Notice from the District made the sole basis of their complaint.

---

existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(2) (Vernon 2002).

[2] According to section 10.001(1), the signing of a pleading certifies "that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry . . . the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation." *Id.* § 10.001(1) (Vernon 2002).

Cleburne ISD contends that this finding is supported by the following statement made by counsel for Sossamon and Kirkland during the sanctions hearing: "Yes, Katelyn was provided with a note to take home to her mother, but it wasn't the kind the Texas Education Code said."

Statements of counsel do not generally constitute evidence unless made under oath. *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (per curiam); *Russ v. Titus Hosp. Dist.*, 128 S.W.3d 332, 338 (Tex. App.—Texarkana 2004, pet. denied). The oath requirement can be waived if the opposing party fails to object when he knows or should know that an objection is necessary. *Id.*

In *Banda*, the attorney "was clearly attempting to prove the existence and terms of the settlement agreement," stating, for example, "this agreement that *I'm testifying to* today before the court as an officer of the court, if Mr. Latham felt so strongly about it, he is not present." *See Banda*, 955 S.W.2d at 272. Here, however, counsel was not offering evidence. Rather, counsel was presenting argument in response to Cleburne ISD's counsel with regard to the propriety of sanctions and, in particular, whether Cleburne ISD had violated section 28.022.

At the sanctions hearing, Cleburne ISD offered in evidence a transcription of the injunction hearing.[3] Aside from this transcription, the only other evidence arguably offered and admitted at the hearing was counsel's testimony regarding the amount of attorney's fees incurred.

---

[3] We assume without deciding that the court took judicial notice of the testimony from the prior hearing. *See Davis v. State*, 293 S.W.3d 794, 797 (Tex. App.—Waco 2009, no pet.).

Sossamon and Kirkland claimed that Cleburne ISD failed to give the notice required by section 28.022, which provides in pertinent part:

(a) The board of trustees of each school district shall adopt a policy that:

　　(1) provides for a conference between parents and teachers;

　　(2) requires the district, at least once every 12 weeks, to give written notice to a parent of a student's performance in each class or subject; and

　　(3) requires the district, at least once every three weeks, or during the fourth week of each nine-week grading period, to give written notice to a parent or legal guardian of a student's performance in a subject included in the foundation curriculum under Section 28.002(a)(1) if the student's performance in the subject is consistently unsatisfactory, as determined by the district.

(b) The notice required under Subsections (a)(2) and (a)(3) must:

　　(1) provide for the signature of a student's parent; and

　　(2) be returned to the district.

TEX. EDUC. CODE ANN. § 28.022(a), (b) (Vernon 2006).

Their claim focused on the notice required by subsection (a)(3).[4] According to the statute, written notice must: (1) be given to the parent or legal guardian; (2) provide for the parent's (or, presumably, the guardian's) signature; and (3) be returned to the district. *Id.*

The only *evidence* offered regarding whether a proper notice was given is Sossamon's testimony at the injunction hearing. She testified that Kirkland first received a failing grade in English during the third six-weeks' grading period in the fall of 2007. Kirkland had failing marks in the fourth and fifth grading periods as well but

---

[4]　　Cleburne ISD does not dispute that it was required to send notice under section 28.022.

did not tell Sossamon until sometime during the fifth grading period that she was failing English. Sossamon testified that Kirkland received progress reports for each grading period but never showed them to Sossamon, instead making excuses for being unable to do so. She testified unequivocally that she "never received anything to sign and return back to the school."

There is no evidence in the record that the progress reports given to Kirkland either provided for a parent's or guardian's signature or indicated that they must be returned to CHS. Thus, the record contains no evidence that "Sossamon had received the notice required by section 28.022." The trial court abused its discretion in ruling otherwise. *See Unifund CCR Partners v. Villa*, 53 Tex. Sup. Ct. J. 57, 60, 2009 Tex. LEXIS 823, at *12 (Tex. Oct. 23, 2009) (per curiam) (trial court abuses its discretion in imposing sanctions "when its decision is contrary to the only permissible view of probative, properly-admitted evidence").

*Compliance with Graduation Requirements*

The second component of the court's bad faith determination is grounded in its Findings of Fact Nos. 6 through 9 in which the court found:

> 6. Kirkland did not meet the state and local requirements to graduate and receive a diploma from Cleburne High School.
>
> 7. Plaintiffs were aware, prior to filing their Petition, that Kirkland did not meet the state and local requirements in order to graduate and receive a diploma from Cleburne High School.
>
> 8. Plaintiffs were aware, as early as April 16, 2008, that Kirkland would not be awarded a diploma from nor be allowed to participate in graduation ceremonies at Cleburne High School.

9. By exhausting all administrative remedies before filing the Petition, Plaintiffs had numerous conversations with District personnel and were aware that they could not receive the remedy they requested.

From these findings, the court reached the conclusion that Sossamon and Kirkland "were informed throughout their attempt to receive a diploma and graduate with [CHS] that Kirkland had not, could not, and did not meet all necessary requirements to so receive a diploma from and participate in graduation ceremonies with [CHS]."

Cleburne ISD argued and the court ruled that a student must satisfy both state and local requirements to graduate from CHS. Cleburne ISD cited section 28.025 of the Education Code, section 101.4001(a) of title 19 of the Texas Administrative Code, and Cleburne ISD Board Policy EIF(LEGAL) to support this assertion. However, these provisions say nothing about compliance with "local requirements" as a prerequisite for graduation.

Section 28.025 provides in pertinent part that "a student may graduate and receive a diploma only if the student successfully completes the curriculum requirements identified by the State Board of Education under Subsection (a) and complies with Section 39.025." TEX. EDUC. CODE ANN. § 28.025(c)(1) (Vernon Supp. 2009).[5] Subsection (a) of this statute refers to the statewide curriculum requirements specified in section 28.002. *See id.* §§ 28.002, 28.025(a) (Vernon Supp. 2009). Section

---

[5]     Subsection (c)(2) of this statute applies to any student who "successfully completes an individualized education program under Section 29.005." TEX. EDUC. CODE ANN. § 28.025(c)(2) (Vernon Supp. 2009). This subsection does not apply to Kirkland.

39.025 requires a satisfactory score in end-of-course assessments for "each subject in the foundation curriculum."[6] *Id.* § 39.025 (Vernon Supp. 2009).

Section 101.4001 of title 19 provides in pertinent part, "All students must pass exit-level assessments in English language arts, mathematics, science, and social studies to qualify for a high school diploma from a Texas public school." 19 TEX. ADMIN. CODE § 101.4001(a) (2009) (Tex. Educ. Agency, Testing Requirements for Graduation); *see also id.* § 101.7(a) (2009) (Tex. Educ. Agency, Testing Requirements for Graduation) ("To be eligible to receive a high school diploma, a student must demonstrate satisfactory performance as determined by the State Board of Education (SBOE) on the assessments required for graduation as specified in the Texas Education Code (TEC), Chapter 39, Subchapter B.").[7]

Cleburne ISD Board Policy[8] EIF(LEGAL) provides:

A student may graduate and receive a diploma only if the student successfully completes:

1.   The curriculum requirements identified by the State Board of Education [see STATE GRADUATION REQUIREMENTS, below] and has performed satisfactorily on the exit-level assessments [see EKB]; or

---

[6]   The "foundation curriculum" includes English language arts, mathematics, science, and social studies. TEX. EDUC. CODE ANN. § 28.002(a)(1) (Vernon Supp. 2009).

[7]   Section 101.4001 provides for "alternative exit-level assessments" by which a student may be exempt from taking the TAKS exit-level assessment in English and/or mathematics with a sufficient score on the SAT or ACT. *See* 19 TEX. ADMIN. CODE § 101.4001 (2009) (Tex. Educ. Agency, Testing Requirements for Graduation); *see also* TEX. EDUC. CODE ANN. § 39.025(a-1) (Vernon Supp. 2009). Conversely, section 101.7 applies to high school students generally. *See id.* § 101.7 (2009) (Tex. Educ. Agency, Testing Requirements for Graduation).

[8]   Cleburne ISD's Board Policies are available on line at the website of the Texas Association of School Boards. *See* CLEBURNE INDEP. SCH. DIST., CLEBURNE ISD BOARD POLICY MANUAL, http://www.tasb.org/policy/pol/private/126903/ (last visited Dec. 3, 2009).

> 2.   An individualized education program (IEP) developed under Education Code 29.005.

This local policy appears to be nothing more than a local version of section 28.025(c) of the Education Code. *Cf.* TEX. EDUC. CODE ANN. § 28.025(c). And like section 28.025 and the cited provisions of the Texas Administrative Code, this local policy makes no reference to local graduation requirements.[9]

The court found that Kirkland did not satisfy all state and local requirements to graduate and receive a diploma from CHS, that Sossamon and Kirkland were aware of this before they filed suit, and that they were aware as early as April 16, 2008 that Kirkland would not be permitted to graduate or receive a diploma from CHS. However, Cleburne ISD has not identified a single requirement which Kirkland did not satisfy. Cleburne ISD focuses on the fact that Kirkland earned her final English credit at the TEAM school rather than at CHS. The TEAM School Graduation document states that a TEAM student who wishes to graduate from CHS "may transfer to that school at the beginning of the last semester of our senior year." It does not provide for or prohibit transfers during the last semester of the senior year.

At the injunction hearing, Sossamon and Kirkland offered in evidence a May 16, 2008 letter from Superintendent Warlick denying their request for Kirkland to graduate with CHS. Warlick cited two reasons for his decision: (1) the above quoted TEAM School Graduation document "clearly states that Katelyn and you understood that

---

[9]   By contrast, Board Policy FMH(LOCAL) provides, "Students shall meet all state and local graduation requirements, including all applicable exit-level testing, to be eligible to participate in commencement activities and ceremonies."

Katelyn must graduate from TEAM school and could not graduate from [CHS]"; and (2) page 3 of the TEAM School Handbook provides that a student in Kirkland's position must graduate from the TEAM School and cannot "go back to [CHS] for graduation." However, the quoted document does not "clearly state" this information and the TEAM School Handbook is not in the record.

During cross-examination of Sossamon at the injunction hearing, Cleburne ISD's counsel asked whether it was a district policy "that if a student goes in to TEAM School the last semester of their senior year, they must graduate from TEAM School." Sossamon replied that she did not know. Cleburne ISD did not introduce evidence of this alleged policy at the injunction hearing and none appears in the record.

*Improper Motive*[10]

In Finding of Fact No. 9, the court found that Sossamon and Kirkland were aware before filing suit that they could not obtain the remedy sought. According to Cleburne ISD, it may be inferred that they harbored an "improper motive" in filing this suit because "[t]he relevant *law* available to Appellants before they filed the Petition was that: (i) in order to graduate from CHS, Kirkland must meet all state and local graduation requirements; and, (ii) a Texas court is without authority to grant Appellant's requested relief."

We have already discussed how the record contains no evidence of a local graduation policy with which Kirkland failed to comply. We now turn our attention to

---

[10] A party seeking sanctions must show improper motive if it seeks to obtain sanctions on the basis of bad faith. *Parker v. Walton*, 233 S.W.3d 535, 540 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Cleburne ISD's contention that a Texas court is without authority to grant the relief sought, namely, to compel Cleburne ISD to permit Kirkland to participate in the CHS graduation ceremony and give her a CHS diploma. However, the law in this area is not as settled as Cleburne ISD contends, particularly with regard to the nature of a student's interest in receiving a high school diploma or participating in a graduation ceremony.

The Fifth Circuit has concluded that a high school student has a constitutionally protected property interest in receiving a high school diploma.

> It is clear that in establishing a system of free public education and in making school attendance mandatory, the state has created an expectation in the students. From the students' point of view, the expectation is that if a student attends school during those required years, and indeed more, and if he takes and passes the required courses, he will receive a diploma. This is a property interest as that term is used constitutionally.

*Debra P. v. Turlington*, 644 F.2d 397, 403-04 (5th Cir. Unit B May 1981); *see GI Forum v. Tex. Educ. Agency*, 87 F. Supp. 2d 667, 682 (W.D. Tex. 2000) ("The Court has previously found, and reiterates here, that the State of Texas has created a protected interest in the receipt of a high school diploma.").

The late federal Judge William Wayne Justice applied *Debra P.* in the case of three students who failed the TAAS exam and were told they could not participate in their high school's graduation ceremony.

> It hardly needs emphasizing that high school graduation ceremonies are an occasion to celebrate profound personal achievement and hope for the future. A student's high school graduation is the source of fond memories and treasured mementos and photographs that cannot be replaced. Unquestionably, plaintiffs will suffer irreparable harm if they are denied the opportunity to participate in their graduation ceremony.

*Crump v. Gilmer Indep. Sch. Dist.*, 797 F. Supp. 552, 554 (E.D. Tex. 1992). Judge Justice granted two of the students[11] injunctive relief, ordering the school district to permit them "to participate fully" in the graduation exercises. *Id.* at 557. Thus, Judge Justice at least implicitly concluded that the right to participate in a particular graduation ceremony is a constitutionally protected interest on the same level as the right to receive a diploma.[12]

Eleven days after the *Crump* decision, Judge Sam Sparks of the Western District of Texas came to a different conclusion in a case involving another student who failed the TAAS exam.

> While the Court recognizes that high school graduation is an important and memorable occasion in a young person's life, "walking across the stage" certainly does not rise to the level of a constitutionally protected property interest any more than attending one's high school prom, which most young people also expect to do after completing twelve years of public school. It is the actual high school diploma which is the property interest described in *Debra P. v. Turlington.* There is no accompanying constitutional right to receive that diploma at a specific graduation ceremony.

*Williams v. Austin Indep. Sch. Dist.*, 796 F. Supp. 251, 255 (W.D. Tex. 1992) (citation omitted). Judge Sparks denied Williams's request for injunctive relief. *Id.* at 256. In the concluding paragraph of his opinion, he took the opportunity to express his difference of opinion with Judge Justice regarding the interests at issue.

---

[11]  The two students in whose favor the judge ruled established that they had satisfied all requirements for graduation other than passing the TAAS exam. The third student failed to make this showing. *See Crump v. Gilmer Indep. Sch. Dist.*, 797 F. Supp. 552, 557 (E.D. Tex. 1992).

[12]  It is also noteworthy that Judge Justice expressly authorized the school district to "have it announced at ceremonies, if its officials so desire, that such plaintiffs have not yet [passed the TAAS exam]" and held that the district "shall not be required to issue a diploma to either of such plaintiffs until each, respectively has [passed the TAAS exam]." *Id.*

While the contentions and supporting evidence of these cases are obviously dissimilar, this Court is also in basic disagreement with Judge Justice. The right of a free public education in Texas is a Texas constitutional right, and the level of education and academic achievement necessary to obtain a diploma from a Texas high school is appropriately a judgment call for the persons elected for that state responsibility and those experienced persons responsible for educating and preparing students to achieve the established level of competence. Any interference in this process is simply destructive to the attempts by the state to salvage its educational system, and this includes interference by the federal judiciary.

*Id.*

Judge David Hittner of the Southern District has reached the same conclusion as Judge Sparks. *See Khan v. Fort Bend Indep. Sch. Dist.*, 561 F. Supp. 2d 760, 767 (S.D. Tex. 2008) (Khan "has no legally protected property interest in attending or speaking at his high school graduation ceremony"). He held that "due process guarantees do not protect a student's interest in participating in extra-curricular activities, such as a graduation ceremony." *Id.* at 764.

The San Antonio Court of Appeals has taken the same position.

[T]he law does not preclude each school district's elected trustees and administrators from permitting their high school students to participate in graduation ceremonies despite the fact that they have failed to pass the TAAS test. The province and wisdom of such a decision rests squarely on the elected board of trustees and not on the courts of this state.

*Edgewood Indep. Sch. Dist. v. Paiz*, 856 S.W.2d 269, 271 (Tex. App.—San Antonio 1993, no writ); *see also Castro v. Northside Indep. Sch. Dist.*, No. 04-04-00836-CV, 2005 Tex. App. LEXIS 9286, at *13 (Tex. App.—San Antonio Nov. 9, 2005, no pet.) (mem. op.) ("While high school graduation may be an important occasion in a student's academic career,

participation in such a school function does not rise to a protected constitutional property interest.").

Both Judge Hittner and the San Antonio Court have equated graduation ceremonies with extracurricular activities in concluding that no constitutionally protected interest is at stake. Cleburne ISD takes this view as well. The Supreme Court of Texas has unequivocally held that a student has no constitutionally protected interest to participate in extracurricular activities. *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 561 (Tex. 1985) ("the federal constitution's due process guarantees do not protect a student's interest in participating in extracurricular activities"). That Court has not, however, held that a graduation ceremony constitutes an "extracurricular activity."

The Commissioner of Education has defined "extracurricular activities" in the Texas Administrative Code.

> (a) An extracurricular activity is an activity sponsored by the University Interscholastic League (UIL), the school district board of trustees, or an organization sanctioned by resolution of the board of trustees. The activity is not necessarily directly related to instruction of the essential knowledge and skills but may have an indirect relation to some areas of the curriculum. Extracurricular activities include, but are not limited to, public performances, contests, demonstrations, displays, and club activities, with the exception of public performances specified in paragraph (2) of this subsection.
>
> (1)  In addition, an activity shall be subject to the provisions for an extracurricular activity if any one of the following criteria apply:
>
> (A) the activity is competitive;
> (B) the activity is held in conjunction with another activity that is considered to be extracurricular;

(C) the activity is held off campus, except in a case in which adequate facilities do not exist on campus;
(D) the general public is invited; or
(E) an admission is charged.

19 TEX. ADMIN. CODE § 76.1001(a) (2009) (Tex. Educ. Agency, Extracurricular Activities).

A graduation ceremony might arguably fit within this definition, yet graduation ceremonies have been differentiated from extracurricular activities in some cases and in the Education Code. For example, in *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402 (5th Cir. 1995), the Fifth Circuit distinguished "extracurricular" basketball from a graduation ceremony, which the court characterized as "a significant, once-in-a-lifetime event." *Id.* at 406-07. And in *Bundick v. Bay City Indep. Sch. Dist.*, 140 F. Supp. 2d 735 (S.D. Tex. 2001), a federal magistrate judge addressed separately the due process guarantees which attach to participation in extracurricular activities or in graduation. *Id.* at 739.

The Education Code arguably equates the receipt of a diploma, which Cleburne ISD agrees to be a constitutionally protected interest, with graduation. *See* TEX. EDUC. CODE ANN. § 28.025(c) ("a student may *graduate and receive a diploma*"). In addition, Chapter 28 of the Education Code, which addresses "Courses of Study; Advancement" (*i.e.*, "academics"), even addresses the development of a "personal graduation plan" for struggling students. *Id.* § 28.0212 (Vernon Supp. 2009).

Federal district Judge Royal Furgeson summarized the state of the law best when he opined that "whether a student has a property interest in graduation ceremonies despite having failed to complete all academic requirements such as the [TAAS exam] is

by no means settled." *Riggan v. Midland Indep. Sch. Dist.*, 86 F. Supp. 2d 647, 654-55 (W.D. Tex. 2000).

Contrary to the trial court's unequivocal finding that "a Texas court is without authority to grant Appellant's requested relief," we agree with Judge Furgeson that the issue "is by no means settled." In other words, Sossamon's and Kirkland's claim that Cleburne ISD wrongfully denied Kirkland permission to participate in the CHS graduation ceremony is a claim with arguable merit because the law is unsettled regarding whether a student has a constitutionally protected interest in graduating from a particular high school during a particular ceremony (*i.e.*, with her fellow 12th grade classmates).

Conversely, the law appears settled (and Cleburne ISD appears to agree) that a student has a constitutionally protected interest in a high school diploma. *See Debra P.*, 644 F.2d at 403-04; *GI Forum*, 87 F. Supp. 2d at 682; *Crump*, 797 F. Supp. at 554; *Williams*, 796 F. Supp. at 255. Part of the relief Sossamon and Kirkland sought was an order directing that Kirkland be given a CHS diploma. As the Fifth Circuit stated in *Debra P.*, "From the students' point of view, the expectation is that if a student attends school during those required years, and indeed more, and if he takes and passes the required courses, he will receive a diploma." 644 F.2d at 404. In Kirkland's case, it seems clear that, after attending the requisite years in Cleburne ISD schools, her expectation was to receive a CHS diploma rather than a TEAM School diploma.

In summary, we hold that the trial court abused its discretion by concluding that Sossamon and Kirkland brought their suit in bad faith for the purpose of harassing

Cleburne ISD. *See R.M. Dudley Constr.*, 258 S.W.3d at 708 (failure to analyze or apply law correctly is abuse of discretion). Thus, the court erred by imposing sanctions under section 10.004 of the Civil Practice and Remedies Code. We sustain their second issue.

## Section 11.161 Sanctions

Appellants contend in their third issue that the court abused its discretion by imposing sanctions under section 11.161 of the Education Code.

Section 11.161 provides:

> In a civil suit brought under state law, against an independent school district or an officer of an independent school district acting under color of office, the court may award costs and reasonable attorney's fees if:
>
> (1) the court finds that the suit is frivolous, unreasonable, and without foundation; and
>
> (2) the suit is dismissed or judgment is for the defendant.

TEX. EDUC. CODE ANN. § 11.161 (Vernon 2006).

We have determined that the trial court abused its discretion by concluding that Appellants' suit was groundless and brought in bad faith for purposes of harassment. For the same reasons, we hold that the court abused its discretion to the extent it concluded that the suit was "frivolous, unreasonable, and without foundation" under section 11.161. *See Cavazos v. Edgewood Indep. Sch. Dist.*, 400 F. Supp. 2d 948, 966 (W.D. Tex. 2005), *aff'd*, 210 F. App'x 414 (5th Cir. 2006).

We sustain Appellants' third issue.

## Conclusion

We reverse the trial court's sanctions order and render judgment denying the motion for sanctions filed by Cleburne ISD and Superintendent Warlick.


                                        FELIPE REYNA
                                        Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
        (Chief Justice Gray dissenting with note)*
Reversed and rendered
Opinion delivered and filed January 20, 2010
[CV06]

*       (Chief Justice Gray dissents.  A separate opinion will not issue.  He notes, however, that both the parent and the adult student had signed a document that would allow the student to graduate from high school on time but would effectively prevent her from graduating from CHS because she was transferring to TEAM after the start of the final semester before graduation.  Unless she can travel backwards in time, this foreclosed her ability to transfer to CHS for graduation in the same semester.)